IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ATLANTIC WORLDWIDE SHIPPING, LLC | § | |
|    DEBTOR | § | CASE NO. 21-32642 |

### DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE

TO ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

## ARTICLE I
## INTRODUCTION

### Identity of the Debtor

Atlantic Worldwide Shipping, LLC ("Debtor") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division on August 3, 2021. The Debtor manages and operates a shipping and freight forwarding business. This Plan proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or in interests in, the debtor, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

### Explanation of Chapter 11

Chapter 11 is the primary reorganization chapter under the Code. The Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor is permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

### Explanation of the Confirmation Process

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan, and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class

must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the Debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## Voting Procedures

**Unimpaired Class**. Claimants in Class 1, 2, 3 and 6 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Class**. The Class 4 and 5 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Class 4 and 5. Each holder of an Allowed Claim in Class 4 and 5 may vote on the Plan by completing, dating, and signing the ballot sent to the holder, and returning it to Debtor's counsel as set forth below:

The ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at **bk@lanelaw.com**. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Best Interests of Creditor Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan, or receive, or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interest of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive substantially less than if the Debtor was permitted to continue operating. Since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in Title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor for which (a) a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor for which (a) a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

4. **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

5. **"Case"** shall mean this Chapter 11 Subchapter V case.

3

6. **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

7. **"Claimant"** shall mean the holder of a Claim.

8. **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

9. **"Code"** shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, as enacted in 1978 and thereafter amended.

10. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

11. **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

12. **"Court"** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

13. **"Creditor"** shall mean any person having a Claim against Debtor.

14. **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

15. **"Debtor"** shall mean Atlantic Worldwide Shipping, LLC.

16. **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Subchapter V Trustee or other entity or person as the Court mandates.

17. **"Effective Date"** The effective date of this Plan is 30 days after the "Confirmation Date".

18. **"Entity"** shall include a person, estate trust, governmental unit and the United States Trustee.

19. **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

20. **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

21. **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, August 3, 2021.

22. **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

23. **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

24. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

25. **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

26. **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

27. **"Subchapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

28. **"Substantial Consummation"** shall occur upon the Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

29. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

30. **"Unsecured Claim"** shall mean any Allowed Claim, unencumbered by a lien or security interest, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

# ARTICLE III
# **REPRESENTATIONS**

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. INADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

Atlantic Worldwide Shipping, LLC, started operations in Houston in July 2017. The company currently operates a global freight forwarding business and a multi-state trucking business that transports freight for manufacturers/brokers across the nation. Atlantic Worldwide Shipping had to commence bankruptcy proceedings due to a decrease in revenue during the pandemic, and continuous withdrawal of funds by the merchant cash advance companies from its operating income. Since the filing of this bankruptcy case, Atlantic Worldwide Shipping, LLC has begun the process of expanding its business operations by introducing local trucking operations, freight brokerage services, and procurement and sourcing services mainly targeting federal government contracts, to increase its gross revenue.

### Future Income and Expenses Under the Plan

The Debtor filed this case on August 3, 2021, with the goal of stopping the immediate collection efforts by merchant cash advance companies and increasing the payment duration on its debts. The Debtor anticipates having receivables available to fund the plan and pay the creditors pursuant to the proposed plan. Attached hereto as Exhibit "A" are projections of gross income, expenses, and operating income for the next five years. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned by Al Shamali International Freight Services LLC (65%) and Priji Kumar Sasidharan (35%). Priji Kumar Sasidharan will remain the Managing Director of the company going forward.

## ARTICLE V
## ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates a shipping and freight forwarding business. The Debtor had approximately $147,559.13 in accounts receivable as of the Petition Date, subject to the factoring agreement with Advance Business Capital dba Triumph Business Capital. The Debtor owns some office furniture and equipment. Debtor also owns a 2020 Freightliner M2-106.

A liquidation analysis of the Debtor's assets is attached hereto as Exhibit "B".

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating its business. The Debtor's Plan will break the existing claims into seven categories of Claimants. These claimants will receive cash repayments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities, and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants Allowed Administrative Claims of Professionals and Subchapter V Trustee** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid immediately following Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants Priority Unsecured Tax Claims** There are four Class 2 Claimants, each of which will be treated as follows:

**2-1 City of Houston** filed a priority claim in the amount of $97.97 (Claim No. 1) and will be paid in full on the Effective Date of the Plan.

**2-2 Alief Independent School District** filed a priority claim in the amount of $210.07 (Claim No. 2) and will be paid in full on the Effective Date of the Plan.

**2-3 Harris County** filed a priority claim in the amount of $131.73 (Claim No. 3) and will be paid in full on the Effective Date of the Plan.

**2-4 Internal Revenue Service** filed a priority claim in the amount of $373.72 (Claim No. 9) for estimated 2021 taxes. Debtor will pay such taxes as they come due.

A failure by the reorganized Debtor to make a payment to a Class 2 Claimant pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Claimant, the Claimant may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the reorganized Debtor and upon Debtor's attorney, Robert "Chip" Lane. The Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, this Claimant, at its option, may declare the default non-curable and proceed to collect the remainder of the debt.  Any unsecured portion of a Priority Unsecured Tax Claim will be treated as an Allowed General Unsecured Claim.

**Class 3 Claimants Priority Independent Contractor Claims** have all been paid in full by Order of the Court authorizing payment of pre-petition monies owed to the independent contractors (Docket No. 40).

**Class 4 Claimants** Secured Claim (These claims are impaired) Allowed Secured Claims are secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor's secured pre-petition claim and the proposed treatment under the Plan:

**Advance Business Capital dba Triumph Business Capital** filed a secured claim (Claim No. 11) in the amount of $107,884.10. The Claim will be paid pursuant to the Final Order Authorizing The Debtor to Continue Operating Under Factoring (Docket No. 51), attached as Exhibit "C".

**North Mill Credit Trust** filed a secured claim (Claim No. 4) in the amount of $139,713.09. This claim is secured by a 2020 Freightliner M2-106. Debtor will pay the fair market value of the collateral at $80,000.00 at 5.25% interest per annum in monthly installments and the claim will be paid in 60 equal monthly payments. The payments will be $1,518.88 per month with the first monthly payment being due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. Any unsecured portion of this claim will be treated as general unsecured pursuant to Class 5 of the Plan.

**Class 5 Claimants** Allowed Unsecured Claims (These claims are impaired) All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years beginning not later than 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day and continuing every year thereafter for the additional four (4) years remaining on this date. Nothing prevents Debtor from making monthly or quarterly distributions, so as long as 1/5 of the annual distributions to the general allowed unsecured creditors are paid by each yearly anniversary of the confirmation date of the plan. Debtor will distribute up to $273,258.03 to the general allowed unsecured creditor pool over the five (5) year term of the plan. The Debtor's General Allowed Unsecured Claimants will receive 2.5% of their allowed claims under this plan. See below table for breakdown of distributions to the General Allowed Unsecured Claims:

| Allowed General Unsecured Claim Creditors | Total Claim Amount | Total to be Paid during the 5-year Plan at 2.5% of Total Claim | If Monthly Distribution | If Quarterly Distribution | Required Yearly Distribution |
|---|---|---|---|---|---|
| Al Shamali Int'l | $1,411,581.50 | $35,289.54 | $588.16 | $1,764.48 | $7,057.91 |
| Bank of America | $40,336.52 | $1,008.41 | $16.81 | $50.42 | $201.68 |
| Cadence Bank | $9,404.69 | $235.12 | $3.92 | $11.76 | $47.02 |
| First National Bank Omaha | $10,002.82 | $250.07 | $4.17 | $12.50 | $50.01 |
| North Mill Credit Trust (Unsecured Portion) | $59,713.09 | $1,492.83 | $24.88 | $74.64 | $298.57 |
| PayCargo | $745,206.90 | $18,630.17 | $310.50 | $931.51 | $3,726.03 |

9

**Class 6 Equity Interest Holders (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan; however, they will be allowed to retain their ownership in the Debtor.

**Class 7 Special Class Disputed Claims** Objections to these claims are pending before the Court. Should these claims be disallowed in their entirety, the Claimants will not receive any distribution from the Plan. To the extent these claims are allowed, the Debtor proposes to pay the Claims as follows:

**7-1 Novus Capital Funding LLC** filed a secured claim in the amount of $70,453.00 (Claim No. 10). Debtor will pay the full amount of the claim at zero percent interest in monthly installments and the claim will be paid in full in 60 equal monthly payments over the next five (5) years beginning not later than the 15th day of the first full calendar month following the Effective Date of the plan. Nothing prevents Debtor from making monthly or quarterly distributions that may begin on the fifteenth (15th) day of the month after the effective date, so as long as 1/5 of the annual distributions are paid by each yearly anniversary of the confirmation date of the plan.

**7-2 Manoj Nevis** filed a claim in the amount of $200,000.00, with $12,475.00 being entitled to priority (Claim No. 7). Debtor will pay the priority amount owed plus $2,525.00 for a total of $15,000.00 to be distributed to the Claimant. Debtor proposes to pay this amount within 90 days after the Effective Date of the plan.

## ARTICLE VII
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

All guarantees and other obligations shall be deemed modified to reflect the restructuring of the primary obligations under the Plan. If the plan is confirmed, a creditor may not enforce liability under a guaranty or other third-party claim unless the Debtor defaults under its obligation to such creditor as outlined in this Plan. In the event of default, only the amount owing under the Plan shall be recovered from the guarantor. This provision is intended to apply to creditors who had previously recovered judgments against any guarantor.

## ARTICLE VIII
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtor believes the Plan is feasible.

## ARTICLE IX
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE X
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $15,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately $2,305,125.69. The Debtor's assets include funds in the bank, accounts receivable (subject to liens of Triumph Business Capital) one truck, and minimal office furniture. Administrative creditors must be paid before unsecured debts, and therefore, a liquidation would result in a significantly smaller distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XI
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

## ARTICLE XII
## EVENTS OF DEFAULT AND EFFECT THEREOF

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtor. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Robert "Chip" Lane
The Lane Law Firm
6200 Savoy Drive
Suite 1150
Houston, Texas 77036-3300

The Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

## ARTICLE XIII
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

Releases of Claims by Holders of Claims:  Except as otherwise specifically provided for herein, upon the entry of the Confirmation Order (a) each Person that votes to accept the Plan or is presumed to have voted for the Plan pursuant to Section 1126(f) of the Bankruptcy Code; and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the entry of the Confirmation Order, each Entity or Person, that has held, holds, or may hold a Claim or interest (hereinafter a "Release Obligor"), in consideration for the obligations of Debtor and Reorganized Debtor under the Plan and the case, shall have conclusively, absolutely unconditionally, irrevocably and forever, released and discharged Debtor and any individual having personally guaranteed a debt of the Debtor from any Claim or claim of action existing as of the entry of the Confirmation Order arising from, based on or relating to, in whole or in part, the subject matter of or the transaction or event giving rise to the Claim or claim for relief of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation; provided, however, that this provision shall not release Debtor from any cause of action held by a Governmental entity existing as of the entry of the Confirmation Order based (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, (iii) any criminal laws of the United States or any domestic state, city or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city or municipality, or (v) Sections 1104-1109 and 1342(d) of the Employee Retirement Income Security act of 1974, as amended.

## ARTICLE XIV
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtor that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.

## ARTICLE XVI
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate other than the litigation to collect pending accounts receivable.

Dated: November 1, 2021.

Respectfully submitted,

Atlantic Worldwide Shipping, LLC
By: */s/Madhavadas Nair*
Madhavadas Nair, General Manager